# Richmond.

## KAHN v. KERNGOOD.

### MARCH 19th, 1885.

### (Absent, *Lewis* P.)

1. APPELLATE JURISDICTION—*Dissolution of Injunctions.*—From an order overruling an injunction and adjudicating the principles of the cause, an appeal lies.   Code 1873, ch. 178, sec. 2.

2. IDEM—*Matter in Controversy.*—Where a deed conveys property alleged therein to be worth over $500, and is assailed as fraudulent by a creditor whose debt is less than $500, as between the grantee and the assailing creditor, the matter in controversy is the value of the property, and not the amount of the debt; and in the absence of proof to the contrary, the alleged must be deemed the actual value of the property.

3. PRACTICE IN CHANCERY—*Injunctions.*—When on bill and answer denying all equity in the bill, there is a motion to dissolve an injunction, it is customary to dissolve; but for good cause the motion may be overruled, and the injunction continued till the hearing without any adjudication of the principles of the cause.

Appeal of B. Kahn from two decrees of the judge of the corporation court of the city of Norfolk, entered in vacation on the 27th April, 1883, and on the 2nd May, 1883, respectively, in a certain suit, wherein said Kahn and another are defendants, and Tobe Kerngood, Wm. Kerngood and Abe Kerngood, partners in the name of Kerngood & Bros., are plaintiffs. The object of the suit is to set aside as fraudulent a certain deed executed by one J. D. Hofheimer, who is the debtor of the plaintiffs to the amount of two notes aggregating, after deducting a credit of $100, about $203, to B. Kahn, and convey-

ing to him goods, wares and merchandise, alleged in the deed to be of the value of about $1500. An injunction was awarded restraining the sale of the property, and an order entered directing the sale of the property at auction. Kahn answered the bill, denying all the allegations of fraud on the part of himself or of his grantor: and on the bill and the answer, and on the affidavits, moved the dissolution of the injunction. The motion was overruled, and Kahn appealed to this court.

*Borland & Brooke*, for the appellant.

*Godwin & Martin*, for the appellees.

HINTON, J., delivered the opinion of the court.

The plaintiffs, who constitute the firm of Kerngood Bros., in their bill allege that they are creditors of one J. D. Hofheimer, who had recently sold his stock of goods and personal property to one B. Kahn, with intent to defraud the creditors of the said Hofheimer; that Kahn had conspired with Hofheimer in his attempt to carry out this fraudulent purpose; and they pray that Kahn and Hofheimer may be enjoined from disposing of said property; that a receiver may be appointed; the conveyance be declared void; and the property may be sold under the direction of the court. This bill was filed in the clerk's office of the corporation court of the city of Norfolk, on the 27th day of April, 1883, in vacation; and on the same day an injunction was awarded; a receiver appointed, and a sale of the property was directed by the judge of that court, in accordance with the prayer of the bill. On the next day Kahn filed his answer, in which he specifically denies every allegation of fraud in the bill positively, so far as he was concerned, and to the best of his information and belief, so far as his vendor, Hofheimer, was concerned. On the 29th April, 1883, the receiver advertised the property for sale, at auction, on the 4th May then next en-

suing.  On April 30th, 1883, Kahn served notice of a motion
to be made on May 2nd, 1883, to dissolve the injunction on the
bill and answer.  On the last mentioned day, the cause came
on to be heard, pursuant to said notice, upon the bill and an-
swer, and three affidavits in support of the bill, when the judge
overruled the motion to dissolve the injunction, and continued
the same to the hearing.  Whereupon, the said Kahn applied
for and obtained an appeal from one of the judges of this court.

The first question, therefore, which arises is as to the power
of this court to take cognizance of the case.  It is insisted that
this being a mere order refusing to dissolve an injunction, that
no appeal lies therefrom.  Such, however, is not the case.  The
Code 1873, chap. 178, § 2, provides that "any * party to a case
in chancery wherein there is a decree or order dissolving an
injunction, or requiring money to be paid, or the possession or
title of property to be changed, or adjudicating the principles
of the cause,  *   *   *   *   may present a petition for an ap-
peal from the decree or order," &c.  And Judge Moncure, in
the case of the *Baltimore and Ohio R. R. Co.* v. *City of Wheeling*,
13 Gratt. 57, said, "As to the objection that no appeal lies from
the other order; it being a mere refusal of the judge in vacation
to dissolve the injunction, and not an order adjudicating the
principles of the cause.  There seems to be no substantial differ-
ence between the provision on this subject in the Code, p. 682,
ch. 182, § 2, and the law as it existed when the Code took effect.
In *Lomax* v. *Picot*, 2 Rand. 247, it was decided that an order
overruling a motion to dissolve an injunction might come within
the terms of the law allowing appeals from interlocutory orders,
and within the mischief intended to be remedied by that law.
The appeal in that case was from such an order, and the court
entertained jurisdiction of it.  In *Talley* v. *Tyree*, 2 Rob. R. 500,
it was held, in accordance with *Lomax* v. *Picot*, that an appeal
lies to this court from an order of the circuit court overruling
a motion to dissolve an injunction which was improvidently
granted.  The law under which those two cases were decided

being the same in effect with the provision on the subject in the Code, they maintain the right of appeal from the order in this case." And again he says, at page 59: "The refusal of the judge to dissolve the injunction adjudicated the principles to this extent, that the injunction had not been improvidently awarded, and that as the cause then stood it ought still to be continued. It is therefore such an order as may be appealed from."

Upon this point we think the statute and case above quoted must be regarded as conclusive. The appeal in the case before us was taken as well from the order appointing a receiver and directing a sale, as from that refusing to dissolve the injunction; and as it cannot be contended with any show of success that the stock of goods described in this case is of the character of those spoken of in section 16 of chapter 148, Code 1873, which the court is authorized to sell because "perishable and expensive to keep," we must assume that the court regarded and treated them as the property of Hofheimer, for upon no other ground could the judge have the slightest pretext for selling this property; and this was a practical adjudication of the matter in issue, namely, the title to the property; and even then, his action must be regarded as irregular and premature.

But it is contended, that the amount of the plaintiff's claim being under $500, that this court cannot take jurisdiction of the case. This contention is founded, in our judgment, upon an entire misapprehension of the real matter of controversy. This is a suit to set aside a conveyance alleged to be fraudulent as to creditors. The value of the property, stated in the deed, is $1500, and upon this appeal, in the absence of proof of its real value being less, we must assume that amount as its value, and it is therefore sufficient to give jurisdiction. As between the plaintiffs and the defendant Kahn, there is no contest over a debt. It is admitted, that no matter what may be the debt due from Hofheimer to the plaintiffs, that Kahn does not owe them one cent. Nor is it pretended that Kahn's property, if it be

Kahn's, is bound by any lien of the plaintiffs. It is only in the event that the deed is proven to be fraudulent in its entirety that the plaintiffs can have any possible claim upon the property conveyed thereby. It is therefore not a contest, so far as Kahn is concerned, over a debt, or even over property, of less value than $500, but it is as to him, a contest as to his title to $1500 worth of property. The suit not having been brought to set aside the deed in part but in whole, the real question, so far as Kahn is concerned, is whether the $1500 worth of property conveyed by that deed is his or Hofheimer's, and the question as to the amount of the plaintiffs' debt is one collateral to the main issue.

And this brings us to the last question in the case, which is, whether the court should have dissolved the injunction on bill and answer or not? The general rule is, that when a motion to dissolve comes on to be heard upon the bill and answer, and the answer denies all the equity of the bill, the injunction is usually dissolved; but this rule is not inflexible, for the court may, for good cause shown, refuse to dissolve the injunction, and continue it to the hearing, without adjudicating the principles of the cause. Sands' Suit in Equity (new edition), § 366; 1 Barton's Ch'y Pr. 467; *B. & O. R. R. Co.* v. *City of Wheeling*, 13 Gratt. 58. We think the case at bar falls within the exception. The law of this state being settled since the case of *Davis* v. *Turner*, 4 Gratt. 423, that the retention of the possession of personal property by the vendor, after an absolute sale, is *prima facie* evidence of fraud as against the creditors of the vendor, which will vacate the transaction as to them, unless the vendee shall prove it to be fair and *bona fide.* We think it was proper for the judge to have refused to dissolve the injunction upon the mere answer of only one of the parties to the assignment.

We are of opinion, therefore, to reverse the order of the judge of the corporation court of the city of Norfolk, made in vacation on the 27th day of April, 1883, in so far as it directs a sale

of the property in the bill and proceedings mentioned, and to direct that the said property be returned to the custody of the appellant Kahn, upon his executing and delivering a sufficient bond to secure the forthcoming of the property, to answer the future orders of the court, to discharge the receiver, and to remand the cause for further proceedings to be had in order to a final decree.

RICHARDSON, J., dissenting, said:

I cannot concur in the opinion of the majority of the court just pronounced, without in my opinion overstepping the jurisdictional limits of this court as plainly prescribed by the constitution.

That the case is one of unusual hardship upon the appellant cannot be denied. In fact, it is so clearly a case of the wrongful exercise of the discretionary powers of the court below, that, but for the inhibition imposed by the constitution, I would not hesitate to break away from any mere line of precedents sanctioning such manifestly erroneous and oppressive practice as that disclosed by the record in this case.

Notwithstanding all this, I cannot be unmindful of the fact that the constitution, as I understand it, in most positive and unequivocal language actually prohibits this court from taking jurisdiction of the case. Section 2, of article 6, of the consitution of Virginia, declares that this court shall have appellate jurisdiction only, except in cases of *habeas corpus*, *mandamus* and prohibition; and expressly provides, "It shall not have jurisdiction in civil cases where the matter in controversy, exclusive of costs, is less in value or amount than five hundred dollars," with certain enumerated exceptions.

That this case does not come within any of the exceptions mentioned in said 2nd section will be conceded by every one. That it is a *civil* case in the sense in which that term is employed in said section, no one will deny.

That the true and only test of what is meant by "the matter in controversy," as used in said section, is the amount mentioned in the declaration or bill, and sought to be recovered by the plaintiff, has been too long and well settled by numerous decisions of this court, and too universally acquiesced in by bench and bar to be now disturbed by anything short of an authoritative change in the constitution itself; a change which this court is without authority to make.    The majority opinion proceeds upon the idea that this was not a suit pure and simple, for the collection of the plaintiff's claim, which is confessedly far below the jurisdictional limit of this court, but is a suit to set aside the conveyance or sale of goods made by the debtor, Hofheimer, to the appellant, Kahn, which goods, it is said, are of the value of $1500.    It would seem to be obvious that jurisdiction cannot be conferred upon this court by any such means.    This is apparent when we reflect that the plaintiffs below, the appellees here, had for their prime object the collection of their debt, less far than $500, to do which, by reason of the alleged fraudulent combination between their debtor, Hofheimer, and the appellant, Kahn, it became necessary to resort to equity, when otherwise they would necessarily have been left to their remedy at law.    Hence, the bill charges that the transaction was not a *bona fide* sale by Hofheimer to Kahn, but a fraudulent combination between them to avoid the payment of the debt to the plaintiffs, from Hofheimer.    Under this charge of fraudulent confederation, Kahn, it is true, answers the bill, denies all fraud on his part, or any knowledge of fraud on the part of his alleged confederate, and moves to dissolve the injunction.    In this way, only, does the idea come into the case that the stock of goods in question is of greater value or amount than five hundred dollars.    It must be borne in mind that the court below in granting the injunction, putting the goods in the hands of a receiver, and directing the goods to be sold, and the receiver to report to court, did not pass upon the merits, not even to the extent of holding that

the plaintiffs have a valid claim; all that is matter for consideration when the proofs are in, the case matured, and a final hearing shall be had. If, at the final hearing it shall turn out that the alleged fraudulent transaction was in fact a *bona fide* purchase by Kahn, for any damage he may have suffered, the injunction bond will be his indemnity.

It seems, therefore, manifest that, in taking jurisdiction upon the basis of value fixed by Kahn's answer (especially under the circumstances of this case), is for this court, upon an appeal from a mere interlocutory order refusing to dissolve an injunction, to assume in advance of the maturing and hearing of the case upon the merits in the court below, that Kahn's answer is true, and the case, in effect, at an end. Such surely cannot be safe or sound judicial procedure. But however true Kahn's answer may be, jurisdiction cannot be founded thereon, or on anything therein contained, as that answer in no possible way constitutes or discloses the real matter in controversy; but is in respect only to a mere incident to the matter really in controversy.

But it is moreover strenuously contended that the order or decree appealed from here, changes the possession and title of property, and that therefore this court has jurisdiction under section 2 of chapter 178, Code 1873. This section must be read in connection with the succeeding third section, and subject to the constitutional provision aforesaid; in fact, the two sections are in effect but one, the third being in the nature of a proviso to the second, the two being only separated by a colon. The two together read:

"2d. Any person who thinks himself aggrieved by an order in a controversy concerning the probate of a will, or the appointment or qualification of a personal representative, guardian, curator or committee, or concerning a mill, road-way, ferry or landing; or any person who is a party to any case in chancery wherein there is a decree or order dissolving an injunc-

tion, or requiring money to be paid, or requiring the possession or title of property to be changed, or adjudicating the principles of a cause, or to any civil case wherein there is a final judgment, decree or order, may present a petition, if the case be in chancery, for an appeal from the decree or order; and if not in chancery, for a writ of error or supersedeas to the judgment or order, *except as follows:*

"3d. No petition shall be presented for an appeal from, or writ of error or supersedeas to, any final judgment, decree or order, whether the commonwealth be a party or not, which shall have been rendered more than two years before the petition is presented; nor to any judgment of a county or corporation court, which is rendered on an appeal from a judgment of a justice; nor to a judgment, decree or order of any other court, when the controversy is for a matter less in value or amount than five hundred dollars, exclusive of costs, unless there be drawn in question a freehold or franchise, or the title or bounds of land, or some matter not merely pecuniary."

The remainder of the third section is unimportant here.

These two sections, by strict grammatical arrangement, of obvious meaning, are purposely linked together, are on the same subject, the one qualifying and explaining the other, and must be read and construed, with reference to each other, in the light of the constitutional provision aforesaid, prescribing the jurisdictional limit of this court. When so read, all idea of this court's jurisdiction, in this case, is actually precluded.

The legislature, in regulating the subjects of appeal and writs of error, by the said second section, enumerates, out of abundant caution, certain exceptional cases, such as the probate of a will, the appointment or qualification of a personal representative, and mills, roadways, ferries, &c.; in respect to all which the right of appeal is secured by express provision of the constitution. Then follows a further enumeration, in the same section, of other cases not enumerated in the constitution, it is

true, but as to which the right of appeal is given, subject, of course, to the express constitutional limitation in respect to "*value or amount*," such, for instance, as where in a chancery cause there is a decree or order dissolving an injunction, or requiring money to be paid, or *the possession or title of property to be changed*, &c. As to all these cases, mentioned in the second section, the legislature only provided the mode of procedure in going from the trial to the appellate court, and conferred, in certain cases, the right of appeal from interlocutory decrees or orders, thereby saving time, anxiety and expense to litigants. But seeing that, by a literal construction of the second section, it was liable to be held unconstitutional, the legislature, instead of stopping short, concludes the section with the pointedly significant words, "*except as follows.*" And then follows the third section, declaring in what cases (among other things) there shall be no appeal to this court; and among them, where the "*controversy is for a matter less in value or amount than five hundred dollars, exclusive of costs.*" Thus squaring up to the constitutional requirement, and in effect saying, that notwithstanding what is said in the second section as to the right of appeal from a decree dissolving an injunction, or directing money to be paid, or by which the possession or title of property is changed, the real meaning is, that those provisions are subject to the constitutional provision forbidding the appeal, where the matter in controversy is less in value or amount than five hundred dollars. This suit was never brought for any purpose other than the collection of the plaintiff's claim. The alleged fraudulent collusion between the debtor and the appellant is simply an incident; and hence, the sole object of the suit being to collect the plaintiffs' debt, they come invoking the aid of a court of equity, to do what? Simply to remove from their path certain fraudulent obstructions, that they may collect their debt, the real matter at issue, and for the accomplishment of which object only was the suit brought.

It will be observed that said third section of chapter 178,

after modifying and expressly restricting the right of appeal, in certain cases mentioned in the preceding second section, to the pecuniary amount prescribed, as aforesaid, by the constitution, and after, in express terms, declaring that in no case, (*i. e.* no case in which the right of appeal as mentioned in said 2nd section, and not secured by the constitution) shall an appeal be allowed where the controversy is for a matter less in value or amount than five hundred dollars, exclusive of costs, adds, "unless there be drawn in question a freehold or franchise, or the title or bounds of land, or some matter not merely pecuniary." Here we find still another enumeration of cases in which the right of appeal to this court is secured, as to one of which, (that concerning the title or bounds of land), the right is secured by the constitution: the other two—the one in respect to a freehold or franchise, and the other as to matter not merely pecuniary—not being in the enumerated exceptions contained in the said provision of the constitution, but expressly provided by the legislature, because thought to be essential to the ends of justice, and because not within the constitutional inhibition, which addresses itself exclusively to the pecuniary value or amount in controversy. Therefore, these exceptions created by the latter clause of said 3rd section, are valid.

No one will pretend that there is involved in this suit any question of freehold or franchise, or any question concerning the title or bounds of land; nor can it be said with the least degree of plausibility that there is drawn in question, in this suit, any matter not merely pecuniary: the object of the suit being purely one for the recovery of a pecuniary demand, and it being obvious that in no event can the stock of goods in question (a mere incident to this suit) be affected, except to the extent of the debt sued for. If it could be otherwise, then this court would be absolutely overrun with petty litigation in respect to almost numberless cases where the matter in controversy would range between twenty dollars and five hundred dollars, and where, however small the claim between the limits

named, the debtor would have the right of appeal to this court upon the absurd idea that, while the debt sued for is barely over twenty dollars, the plaintiff invoking the aid of a court of equity to the end that he may collect his debt by the avoidance of a fraudulent conveyance or sale of property of greater value than five hundred dollars, thereby secures to the alleged fraudulent defendant the right of appeal. Such a construction would not only be a palpable violation of the clause of the constitution regulating the appellate jurisdiction of this court, but would be, in effect, a premium to fraud.

By the use of the language securing the right of appeal as to matters "not merely pecuniary," the legislature never intended to flood this court with vexatious petty litigation; but obviously intended to provide for a meritorious class, as, for example, where the controversy is as to the possession of deeds and other muniments of title, when, irrespective of value (as in the case respecting the title or bounds of land), justice and sound policy demand that the right of appeal should be allowed. But it is useless to pursue this branch of the subject further, except to say that, from whatever standpoint the subject be viewed, there be absolutely nothing to sustain the idea that the stock of goods, as to which the fraudulent collusion is alleged, can afford the test of jurisdictional amount or value.

"Matter in controversy," means the essence of the issue, the thing or value, or amount of the thing for the recovery of which the suit is brought. This subject is exhaustively discussed by Christian, J., in *Umbarger* v. *Watts*, 25 Gratt. 167, where the general view here contended for is clearly and ably held.

It only remains to say, this suit was not brought to recover the stock of goods in question, or the value thereof, but only to recover the plaintiffs' debt, and as an incident, equitable aid is invoked, which in no manner involves the value of said goods, but simply seeks to subject the same, or so much thereof as may be necessary, to satisfy the claim. In no event can the

decree of the court below be for any other or greater sum than the debt sued for, with interest and costs. The essence and substance of the suit is the debt sought to be recovered; and by the payment of that, the defendants, or rather the debtor, may discharge himself. In every case the decree is for the payment of the money found due, and if not paid in a reasonable time, as prescribed, the property subject thereto, or so much as may be necessary, is sold. To illustrate the correctness and even necessity for the construction here contended for, take the ordinary case of a suit in equity to enforce the lien of a judgment. Would it not be unreasonable to hold, that in such case, although the judgment and interest at the date of the decree was less than $500, yet, it appearing that the land decreed to be sold is worth something over $500, the judgment debtor would therefore be entitled to an appeal to this court? It is certain that in such case he could not appeal, however many and gross errors may have been committed by the court below. On the other hand, take the case of a creditor whose judgment is largely in excess of $500, and the property sought to be subjected happens to be of less value than $500, can it be held, in case of a decree wholly disallowing the plaintiffs' claim, that he cannot appeal? In other words, that because the defendant's property liable to his debts will not pay all, the plaintiff shall not have satisfaction to the extent of the value of the property liable. Yet these strange results must necessarily follow if the opinion of the majority of this court is to become settled law.

I would willingly, even gladly, give the relief sought by this appeal, if I did not feel myself actually prohibited therefrom by a positive constitutional command. For the reasons above, I am clearly of opinion that this court has no jurisdiction of the case, and that the appeal was improvidently allowed, and should be dismissed.

DECREE REVERSED IN PART.